UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINITY FINANCIAL SERVICES, LLC,<br><br>Creditor-Appellant,<br><br>v.<br><br>JOSHUA LEMARR TREADWELL,<br><br>Debtor-Appellee. | Case No. 23-cv-00490-PCP<br><br>**ORDER AFFIRMING DENIAL OF MOTION FOR RELIEF FROM JUDGMENT AND IMPOSITION OF DISCOVERY SANCTIONS** |

This is an appeal from a bankruptcy court decision denying relief under Rule 60(b) from an order in the case of Debtor-Appellee Joshua Lemarr Treadwell. After Creditor-Appellant Trinity Financial Services, LLC did not respond to a motion by Mr. Treadwell to value real property that he owned, the bankruptcy court entered an order which had the effect of eliminating Trinity's lien on the property. Trinity sought relief under Rule 60(b), claiming it had not received notice of the motion. Mr. Treadwell opposed Trinity's motion. After a hearing, several rounds of briefing, and a trial, the bankruptcy court denied Trinity's motion and also imposed $13,265 in related discovery sanctions. Trinity now appeals this decision pursuant to 28 U.S.C. § 158(a)(1).

For the reasons explained below, the bankruptcy court's decisions denying Rule 60(b) relief and imposing sanctions against Trinity are affirmed.

## I. Background

At the time Mr. Treadwell filed for Chapter 13 bankruptcy, he owned a rental property encumbered by two deeds of trust: a senior mortgage held by Wilmington Savings Fund Society, FSB, and a junior mortgage held by Trinity. After Mr. Treadwell filed for bankruptcy, both Wilmington and Trinity filed claims they maintained were secured—Wilmington's for $278,612.06 and Trinity's for $157,237.81. Mr. Treadwell subsequently moved to value his

1    property at $270,000. Because Wilmington's claim alone exceeded that value, he also asked for a

2    determination that Trinity's claim was unsecured and thus avoidable under the Bankruptcy Code.

3          Mr. Treadwell served his motion on Trinity by mail to two addresses Trinity had filed with

4    the California Secretary of State as its address of record (one of which it had also listed on its

5    proof of claim on Mr. Treadwell's property). Mr. Treadwell's notice specified that Trinity had 21

6    days to object. Trinity did not respond within that period. Under the "scream-or-die notice"

7    procedure set out in Bankruptcy Local Rule 9014-1(b)(3), Mr. Treadwell then requested that his

8    motion be granted by default. The bankruptcy court first denied this request because Mr.

9    Treadwell had not addressed the notice to the attention of a Trinity officer or authorized agent as

10   required by the Bankruptcy Rules. After Mr. Treadwell served his motion a second time, this time

11   properly addressed, and after Trinity again failed to respond within 21 days, the bankruptcy court

12   granted Mr. Treadwell's motion on May 21, 2021. That order effectively eliminated Trinity's lien.

13         Trinity only discovered that the motion had been granted when it reviewed the docket in

14   the bankruptcy action several weeks later. Shortly thereafter, Trinity filed a motion for relief from

15   judgment under Federal Rule of Civil Procedure 60(b). Trinity contended that Mr. Treadwell had

16   eliminated its lien by undervaluing his property by around $100,000 and requested a belated

17   opportunity to oppose his motion to value. Trinity invoked three of Rule 60(b)'s provisions to

18   argue the valuation order should be set aside: First, there had been "mistake, inadvertence,

19   surprise, or excusable neglect" under Rule 60(b)(1). Second, "the interest of justice … would also

20   allow the Court to set aside the Order" under Rule 60(b)(6). Finally, Mr. Treadwell had

21   misrepresented his qualifications to value the property and this "fraud … by an opposing party"

22   justified relief under Rule 60(b)(3).

23         In its motion, after reciting the four "factors for 'excusable neglect'" set out in *Pioneer*

24   *Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993),

25   Trinity explained why it thought relief was warranted under Rule 60(b)(1):

> [T]here was only one reason why Trinity did not file an opposition to the Motion to value. Trinity did not file an opposition, because it did not know about the Motion to Value. Based on the review of Trinity's mail records, there is no indication that Trinity received a copy of the Motion to Value.… The failure to file an opposition was not the result

> of any lack of due diligence or any intentional disregard or ignoring the Motion to Value. Trinity was simply not aware of the Motion to Value.

Bankr. Dkt. No. 60, at 5. At the hearing, the bankruptcy court began by orally presenting a tentative ruling, walking through Trinity's 60(b)(1), (b)(3), and (b)(6) contentions in turn. Regarding Trinity's 60(b)(1) claim of excusable neglect, the bankruptcy court explained:

> 60(b)(1) is grounds for relief in cases of mistake, inadvertence, surprise, or excusable neglect and I mentioned, I don't think any of these apply. One might say that the failure to receive or open mail is excusable neglect, but the movant has not made out any case at all about how its procedures failed. In fact, it says almost nothing at all about how mail is processed, contending that the failure – and in fact, it contends that the failure to file an opposition was – and this is a quote "not the result of lack of due diligence or intentional disregard or ignoring the motion to value."
>
> So I don't see this as a situation of mistake, inadvertence, surprise, or excusable neglect, at least as made out in the motion.

Bankr. Dkt. No. 166, at 5. After further discussion with both parties' counsel, the bankruptcy court emphasized its conclusion that the "60(b)(1), (3), and (6) grounds … don't apply." But recognizing that "federal courts don't function in favor of default," the court allowed that 60(b)(4) (which allows for relief from a judgment that is void) "might apply," even though Trinity didn't invoke this provision, because "the sum and substance of the motion is … that the mail was not received." The court ordered an additional round of briefing on the 60(b)(4) question and ultimately a trial at which several witnesses presented evidence. At the end of these supplemental proceedings, the bankruptcy court denied Trinity's request for relief under 60(b)(4) as well.

In preparation for the trial on the 60(b)(4) question, the bankruptcy court ordered Trinity to respond to several of Mr. Treadwell's production requests. After the deadline for Trinity's responses, Mr. Treadwell moved for discovery sanctions under Federal Rule of Civil Procedure 37, asserting that Trinity had failed to comply with the court's order. Following a sanctions hearing, the bankruptcy court issued a second discovery order directing Trinity to provide further responses and reserved the sanctions question for trial.

The bankruptcy court concluded that Trinity had failed to comply with its discovery obligations in a sanctionable manner with respect to at least two requests. One of the requests was

3

for the payroll records for Trinity's mail clerk. The bankruptcy court's first discovery order directed Trinity to provide the clerk's payroll records, including the days and hours worked, but Trinity's first response did not include all of this information and Trinity only fully complied after the bankruptcy court issued a second discovery order. The bankruptcy court concluded that Trinity's eventual compliance "show[ed] that Trinity did have payroll records" containing the requested information all along.

The second discovery request involved Trinity's Wyoming address. At first, Trinity claimed that any mail sent to this address would have been scanned and emailed to its CEO. When Mr. Treadwell requested information about the mail handling procedures at this address, however, Trinity first characterized the Wyoming mail procedure as an "online portal," then subsequently clarified that this portal was in fact related to a different Wyoming address belonging to its agent for service of process and that Trinity did not use the Wyoming address to receive or handle mail at all.

Based on this record, the bankruptcy court concluded that "[f]or almost a year, … Trinity sent Debtor's counsel on a wild goose chase that resulted in two discovery-related hearings and a delayed trial." The bankruptcy court found that "Trinity's claim of confusion" was "ridiculous," and its "stonewalling" of discovery requests had not been justified. Ultimately, after a detailed review, the bankruptcy court concluded that Trinity's conduct had been "[a]t worst … bad faith," and "[a]t best, … incredibly sloppy and … completely unwarranted" and had "prejudiced and harmed" Mr. Treadwell. The bankruptcy court therefore awarded Mr. Treadwell $13,265 in attorneys' fees under Rule 37(b).

Trinity filed a timely appeal to this Court, arguing that the bankruptcy court erred in denying relief under Rule 60(b)(1) and that, if this Court were to reverse the order denying the Rule 60 motion, the sanctions award would also have to be reversed because it depended upon that denial.

**II.     Standard of Review**

Under 28 U.S.C. § 158, a district court "act[s] as an appellate court in reviewing the bankruptcy judge's decision." *In re Daniels-Head & Assocs.*, 819 F.2d 914 (9th Cir. 1987). Rule

4

1  60(b) motions "are addressed to the sound discretion" of the trial court "and will not be reversed

2  absent an abuse of discretion." *Casey v. Albertson's Inc*, 362 F.3d 1254, 1257 (9th Cir. 2004). A

3  court "abuses its discretion if it does not apply the correct law" or makes "a clearly erroneous

4  finding of material fact." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000).

**III. The Bankruptcy Court Did Not Err By Declining To Apply The *Pioneer* Test For Determining Whether A Party's Neglect Is Excusable Because Trinity Had Not Adequately Alleged Neglect By A Party.**

In this appeal, Trinity's primary contention is that the bankruptcy court applied the wrong legal standard when considering whether Trinity was entitled to relief based on "excusable neglect" under Rule 60(b)(1). Specifically, Trinity contends that the bankruptcy court failed to apply the four factors identified in *Pioneer*.

Rule 60(b)(1), which extends to bankruptcy cases under Federal Rule of Bankruptcy Procedure 9024, provides: "On motion and just terms, the court may relieve a party … from a final judgment, order, or proceeding for … mistake, inadvertence, surprise, or excusable neglect." In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, the Supreme Court considered the term "excusable neglect" as it is used in several federal procedural rules and determined that the phrase represents an "elastic concept." 507 U.S. at 392. The Court counseled that determining of "what sorts of neglect will be considered 'excusable'" is "at bottom an equitable" inquiry that must take account of "all relevant circumstances." *Id.* at 395. Where the neglect at issue is neglect by the moving party (or their counsel)—as was the case in *Pioneer*—the Court explained that the relevant circumstances "include … the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. *Pioneer* arose in the context of a federal bankruptcy rule, but the Ninth Circuit has extended this equitable test for excusable neglect to Rule 60(b)(1) as well. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir.1997).

In this appeal, Trinity contends that the bankruptcy court made a reversible error of law because it did not explicitly apply the four-factor equitable test set forth in *Pioneer*. In its Rule 60(b)(1) motion, however, Trinity did not allege that its failure to respond was the result of *its own*

5

neglect. Instead, Trinity's motion suggested that "there [was] no indication that Trinity received a copy of the Motion to Value" and that Trinity's "failure to file an opposition was not the result of any lack of due diligence or any intentional disregard." While Trinity is correct that a party need not allege its own neglect in order for relief to be warranted under Rule 60(b)(1), the four *Pioneer* factors were used by the Supreme Court for "determining whether *a party's* neglect … [was] excusable." 507 U.S. at 395 (emphasis added). Here, Trinity's motion did not include allegations of party neglect sufficient to require the bankruptcy court's express consideration of each of the *Pioneer* factors.

Trinity complains that it omitted allegations regarding its own neglect because it did not (and still does not) know why it never received the mailed notices. But Trinity certainly could have investigated why it had not received the notices and described for the bankruptcy court what that investigation had revealed about the potential causes, including any for which Trinity itself might have been responsible. Instead, Trinity disclaimed responsibility. The bankruptcy court cannot be faulted for failing to divine a silent acceptance of potential fault within Trinity's express disclaimer.

Trinity's focus on the four-factor "test" also ignores the *Pioneer* Court's broader recognition that Rule 60(b)(1) requires an "equitable inquiry" that takes account of "all relevant circumstances." As the party seeking relief in equity, it was incumbent upon Trinity to provide the complete factual record necessary to weigh the relevant equities. Rather than doing so, however, Trinity's approach was "characterized by cageyness, lack of candor, and contradiction" and was "[a]t best … incredibly sloppy" and "[a]t worst … bad faith." Bankr. Dkt. No. 133, at 22, 25.

The bankruptcy court, by contrast, went out of its way to protect Trinity's interests. After denying Trinity's initial Rule 60(b) motion because Trinity had not provided sufficient explanation, the bankruptcy court nonetheless gave Trinity another chance to make its case through supplemental briefing and live testimony, over Mr. Treadwell's objection that the court shouldn't be "guid[ing]" Trinity "to do a better job." Bankr. Dkt. No. 166, at 10–12. In accordance with *Pioneer*'s letter and spirit, the bankruptcy court made every reasonable effort to determine whether equity precluded the outcome here, and there is no basis for reversing its decision.

### IV. The Sanctions Order Is Affirmed.

Trinity relatedly argues that the bankruptcy court's discovery sanctions order should be reversed because the discovery at issue only arose because of the bankruptcy court's erroneous denial of 60(b)(1) relief. As an initial matter, Trinity's legal arguments and logic are dubious. Trinity cites a district court's application of a "general common-law rule" that if a judgment is reversed on appeal, "any judgment that is dependent upon [a] reversed judgment is reversed as well." Dkt. No. 7, at 55–56 (quoting *Disher v. Citigroup Glob. Mkts., Inc.*, 486 F. Supp. 2d 790 (S.D. Ill. 2007)). Even assuming this common law principle applies, though, the discovery sanctions ordered against Trinity were not "dependent" on the bankruptcy court's prior decision not to apply the *Pioneer* factors. It is of course possible that Trinity's sanctionable conduct might not have unfolded in the way it did had the court ruled differently on that motion. But sanctions were ultimately awarded solely on the basis of Trinity's "completely unwarranted" conduct that "prejudiced and harmed" Mr. Treadwell. The sanctions did not rest in any way on the bankruptcy court's earlier decision on the 60(b)(1) motion.

In any event, because the Court has concluded that the bankruptcy court did not err in denying relief under 60(b)(1), these questions do not need to be resolved. There is no basis for modifying the sanctions order.

### V. Conclusion

The bankruptcy court's decisions denying Rule 60(b) relief and imposing discovery sanctions against Trinity are affirmed.

**IT IS SO ORDERED.**

Dated: October 27, 2023

P. CASEY PITTS
United States District Judge